UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALEXANDER ORTIZ MONTES,

      Plaintiff,

v.                                        Case No: 6:17-cv-1481-Orl-37TBS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION

      Plaintiff brings this action pursuant to the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for Disability Insurance Benefits and Supplemental Security Income under the Act. Upon review, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

### Background[1]

      On January 10, 2014, Plaintiff protectively filed for benefits, alleging an onset date of June 7, 2010 (Tr. 216-237), later amended to December 31, 2012 (Tr. 23, 52). He claimed he was disabled due to severe sleep apnea, back injury, depression, morbid obesity, stomach disorder, sinus (chronic), diabetes, high blood pressure, weakness in the hands and legs, and short term memory impairment (Tr. 266). Plaintiff's claims were denied initially and on reconsideration (Tr. 136-142,148-158). Then, he requested and

---

[1] The information in this section comes from the parties' joint memorandum (Doc. 25).

received a hearing before an administrative law judge ("ALJ") (Tr. 160, 49-70). On June 16, 2016, the ALJ found Plaintiff not disabled (Tr. 17-48). The Appeals Council denied Plaintiff's request for review (Tr. 1-8), making the ALJ's June 2016 decision the final decision of the Commissioner. Plaintiff brings this action after exhausting his available administrative remedies. This dispute has been fully briefed, and was referred to me for a report and recommendation.

### The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process published in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the claimant can perform. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

At step one in this case the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged amended onset date (Tr. 25). At step two, the ALJ determined that Plaintiff suffered from the severe impairments of: degenerative disc disease of the lumbar spine, obesity, obstructive sleep apnea, diabetes mellitus, major depressive disorder, bipolar disorder, and anxiety (20 CFR 404.1520(c) and 416.920(c)) (Tr. 25). At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 26-29).

Next, the ALJ decided that Plaintiff had the residual functional capacity[2] ("RFC") to perform

> less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant has the residual functional capacity to lift, carry, push, and/or pull 10 pounds occasionally and less than 10 pounds frequently. He can sit for 6 hours out of an 8-hour workday. He can stand and walk for 2 hours out of an 8-hour workday. He can occasionally perform climbing of ramps and stairs, but never climbing of ladders, ropes and scaffolds. He can occasionally perform stooping, kneeling, crouching and crawling. He is limited to occasional exposure to dust, odors, fumes and pulmonary irritants. He is limited to occasional exposure to extreme heat and vibration and no exposure to hazards such as unprotected heights and moving machinery. Mentally, the claimant is able to understand, remember and carryout instructions which are limited to perform simple, routine and repetitive tasks. He is limited to simple work-related decisions, and occasional interaction with coworkers, supervisors, and the general public.

(Tr. 29).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work (Tr. 40).[3] Based on the testimony of a vocational expert ("VE"), the ALJ concluded at step five that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can

---

[2] The RFC is an assessment based on all relevant evidence of the most a claimant can do in a work setting despite any limitations that may result from his impairments. See 20 C.F.R. § 404.945(a)(1); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

[3] At the time of the hearing, Plaintiff was forty one years old, with a high school equivalency degree (GED), and past relevant work as a porter and cleaner, commercial or institutional (Tr. 53-55, 64-65). Based on his testimony (Tr. 55), the ALJ determined that Plaintiff was illiterate and unable to communicate in English (Tr. 40).

perform (Tr. 40). As a result, the ALJ found that Plaintiff was not under a disability at any time from December 31, 2012, through the date of the ALJ's decision (Tr. 41).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id., quoting Bloodsworth v. Heckler, 703 F. 2d 1233, 1239 (11th Cir. 1983). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Evaluation of Medical Opinion Evidence

Plaintiff contends that the ALJ erred in formulating his RFC by failing to adequately

consider and weigh all of the limitations and opinions outlined by treating physician Dr. Jorge Guerrero. Specifically, Plaintiff refers to Dr. Guerrero's findings that he "weighed over 300 pounds with severe daily hypersomnolence, headaches in the morning, extreme fatigue during the day, inability to concentrate, memory loss, severe snoring with choking episodes in the middle of the night consistent with severe obstructive sleep apnea clinically needing a split night sleep study to confirm obstructive and possibly central sleep apnea" (Tr. 397), and his observation that Plaintiff was "extremely hypersomnolent even falling asleep during" their conversation (Tr. 719). Plaintiff argues that the ALJ failed to consider his hypersomnolence, extreme fatigue during the day, inability to concentrate, and memory loss, and failed to incorporate these opinions into Plaintiffs' RFC assessment.

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c). All opinions, including those of non-treating state

agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician *unless there is good cause to do otherwise*. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440. Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Sullivan v. Comm'r. Soc. Sec., No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); Bumgardner v. Comm'r Soc. Sec., No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); Bliven v. Comm'r Soc. Sec., No. 6:13-cv-1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

I find that the ALJ considered Plaintiff's treatment history with Dr. Guerrero, including the passages relied upon by Plaintiff. The ALJ wrote:

> On December 4, 2013, Jorge Guerrero, M.D. at Central Florida Pulmonary Group saw the claimant for evaluation of possible sleep-disorder. He reported that he is severely anxious given the lack of sleep due to severe obstructive sleep apnea with frequent choking episodes. He reported that had gained significant amount of weight of 326 pounds and he used to weigh 200 pounds. He reported his memory last a few seconds and then he forgets everything. On exam, his blood pressure was 150/82 and his weight was 321 pounds and 6

ounces at five feet and seven and half inches tall. He appeared comfortable, well-nourished and in no distress. Dr. Guerrero reviewed a CT scan of the abdomen and pelvis report from Orlando Regional Medical Center (ORMC) from May 26, 2013, shows a 5-millimeter left ureteral stone with mild left hydronephrosis and enlarged fatty liver (Exhibit 3F/5). He reviewed a chest x-ray from ORMC performed in February 2013 and showed clear lung fields have low volumes, no infiltrates, and no abnormalities (Exhibit 3F/7). Dr. Guerrero provided an assessment of a **38 year old male and weighs over 300 pounds with severe daily hypersomnolence, headaches in the morning, extreme fatigue during the day, inability to concentrate, memory loss, severe snoring with choking episodes in the middle of the night consistent with severe obstructive sleep apnea clinically needing a split night sleep study to confirm obstructive and possibly central sleep apnea.** Dr. Guerrero provided diagnoses of anxiety state, hyperlipidemia, obesity and sleep (OSA) (Exhibit 3F/1-3). **Great weight assigned to medical assessment**.

(Tr. 34-35 –emphasis added).

On May 12, 2014, Dr. Guerrero at Central Florida Pulmonary Group saw the claimant in a follow-up visit. The claimant received a C-PAP machine with a nasal mask and with a chin strap but still has significant daily hypersomnolence. He reported having a significant leak in the mask due to the claimant's beard. The claimant's girlfriend gave him a powder to use, he was able to create a nice seal, and **he feels more sleep that is restful. He reported some residual fatigue and malaise, no shortness of breath and no other complaints**. On exam, the claimant's blood pressure was 120/80 and his weight was 307 pounds. **His overall exam was within normal limits.** Dr. Guerrero reviewed the sleep study with a split night protocol from December 23, 2013 revealed severe obstructive sleep apnea with an AHI of 103, the result with a C-PAP pressure of 9-centimeter to water. **Dr. Guerrero provided assessment of a 39-year-old male who is morbidly obese who has severe obstructive sleep apnea with partially treated symptoms leading to a higher pressure to control the obstructive events (Exhibits 10F/1-3 & 11F). Great weight assigned to medical assessment.**

(Tr. 36 - emphasis added, see also Tr. 37). It is apparent from the quoted language that

the ALJ considered and credited Plaintiff's diagnosis of sleep apnea. Consequently, there

is no merit to Plaintiff's contention that these records were ignored. The question is whether these observations/opinions translate into functional limitations which the ALJ should have, but failed to incorporate into Plaintiff's RFC.

To the extent Dr. Guerrero determined Plaintiff had sleep apnea, which impacted his stamina, ability to concentrate, and memory, the ALJ did not disagree. The ALJ found that Plaintiff's obstructive sleep apnea was a "severe" impairment, determined that Plaintiff had "moderate" limitations in concentration, persistence, and pace (Tr. 28), and limited him to a range of sedentary work with extensive additional limitations, including the ability to understand, remember, and carry out only simple, routine, and repetitive tasks; the ability to interact only occasionally with others in the workplace; and the inability to operate moving machinery (Tr. 29). To support his findings, the ALJ summarized the medical records, including observations made by treating sources concerning Plaintiff's level of alertness, concentration, and memory. The ALJ also considered the longitudinal treatment records which show improvement in Plaintiff's symptoms with adjustments to his CPAP/BiPAP machine (Tr. 26-39, 390, 413, 437, 716-18, 784-85, 804, 810, 836, 847). Among these records, the ALJ noted more recent treating records made by other physicians, including:

> On September 11, 2015, Mr. Sedenu at Park Place Behavioral Health Care saw the claimant in a follow-up visit with staff interpreter. **The claimant reported he was okay and the best he ever felt**. On mental status exam, the claimant was oriented times four. He was well groomed. His speech was clear, logical, relevant, and goal oriented. He had no suicidal or homicidal thoughts. He denied having depression and anxiety. His mood was euthymic and in no distress. His affect was appropriate and congruent. His memory, concentration, attention, insight and judgment were fair. He reported having no side effects with medications and was compliant. **His appetite and sleep was okay with C-PAP machine.**

(Tr. 37 –emphasis added). The ALJ also noted that Plaintiff continued to improve:

> On October 30, 2015, Ahmed Masood, M.D. at Central Florida Pulmonary Group-Ridgewood saw the claimant in for follow-up. The claimant was using Bi-PAP now for a few weeks. Back in July, the claimant had titration sleep study and subsequent to that a home Bi-PAP unit was recommended, settings were determined to be 17/11. **He seems to be tolerating it better. He denied any snoring. His sleep quality was improving and daytime symptoms were getting better.**
>
> …
>
> On February 19, 2016, Dr. Masood at Central Florida Pulmonary Group-Ridgewood saw the claimant in a follow-up visit. **The claimant reported feeling better, using pap regularly and sneezing.** The claimant had been using the CPAP regularly and compliantly. He is tolerating the pressures well. **He is noticing improvement in daytime symptoms of tiredness, fatigue, and sleepiness.** There has not been any change in his weight. On exam, the claimant's blood pressure was 127/83 and his weight was 312 pounds. Dr. Masood provided assessments of obstructive sleep apnea, rhinitis, shortness of breath, and morbid obesity (Exhibits 18F/3-6 & 21F/2). **Great weight assigned to medical assessment.**

(Tr. 38 –emphasis added). Thus, it is evident from the ALJ's decision that he fully considered Plaintiff's sleep apnea and the functional limitations found to arise from it. It is also clear that Plaintiff's RFC reflects those limitations, and that the ALJ's findings are supported by substantial evidence.

> Vocational Expert Testimony

At step five of the sequential evaluation process, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." Jones v. Apfel, 190 F.3d 1224, 1229-1230 (11th Cir. 1999). The jobs must exist in significant numbers in the national economy. 20 C.F.R. § 404.1566(a). The ALJ is required to "articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial

evidence, not mere intuition or conjecture." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989)).

Regulations provide that the ALJ may take administrative notice of reliable job information available from various governmental and other publications, including the Dictionary of Occupational Titles ("DOT"). 20 C.F.R. § 404.1566(d). The ALJ may also rely on the testimony of a VE. "When, as here, 'the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills[,] … the Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE.'" Curcio v. Comm'r of Soc. Sec., 386 F. App'x 924, 925 (11th Cir. 2010) (quoting Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). "The Commissioner 'may rely solely on the VE's testimony' in making this decision." Pena v. Comm'r of Soc. Sec., 489 F. App'x 401, 402 (11th Cir. 2012) (quoting Jones, 190 F.3d at 1230).

When "the ALJ elects to use a vocational testimony to introduce independent evidence of the existence of work that a claimant could perform, the ALJ must pose a hypothetical question that encompasses all of the claimant's severe impairments in order for the VE's testimony to constitute substantial evidence." Chavanu v. Astrue, No. 3:11-cv-388-J-TEM, 2012 WL 4336205, at *9 (M.D. Fla. Sept. 21, 2012) (citing Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985). That said, an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." Crawford, supra, 363 F.3d at 1161.

Plaintiff contends that the VE's testimony was defective because the VE did not testify that a hypothetical person could perform the job of "Assembler, DOT #734.637-018," as noted by the ALJ in his decision (Tr. 41). Instead, the VE testified that the

hypothetical person could perform the job of assembler, "DOT code 734.6**8**7-018" (Tr. 67). Plaintiff argues that the DOT code the VE testified to does not exist, and that the ALJ "changed the DOT code in the decision to reflect a job that does exist." Plaintiff claims that as the result of this confusion, the number of assembler jobs available, as relied on by the ALJ, is not accurate. Remand cannot rest on so thin a reed.

The DOT code the VE testified to is, in fact, accurate (See Doc. 25-1). And, as the ALJ specifically referred to the VE's testimony, it appears that the ALJ's written reference to 6**3**7 is no more than a typographical error. Lastly, even if this was not a harmless error, the ALJ identified another job (bench hand) with a significant number of jobs in the national economy (16,951),[4] which supports the ALJ's decision.

Credibility

Plaintiff's final contention is that the ALJ erred in finding him "not credible" when the record "clearly reveals that the Plaintiff suffered from documented impairments causing significant limitations." (Doc. 25 at 28-29).

A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). To succeed, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Id.

---

[4] The Eleventh Circuit has found 840 jobs in the national economy to be a sufficient number to support an ALJ's step five determination. See Brooks v. Barnhart, 133 F. App'x 669, 671 (11th Cir. 2005) (per curiam) (unpublished).

When the ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Id., see also Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Foote, 67 F.3d at 1562.

The ALJ applied the pain standard and determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 32). Plaintiff contends, and I agree, that this is "boilerplate" statement. But, the ALJ continued, explaining that "[t]he medical evidence, the objective medical findings, and the medical opinion evidence" do not support the degree of limitation Plaintiff alleged (Tr. 38) and the limitations alleged are more restrictive than those supported by the objective medical evidence (Tr. 39). The ALJ's decision contains numerous specific findings regarding Plaintiff's treatment history, his acknowledged activities, and opinion evidence, sufficient to support this conclusion (Tr. 33-39).[5] "The question is not ... whether ALJ could have

---

[5] For example, the ALJ referenced largely unremarkable diagnostic tests (e.g., Tr. 33-34); relatively normal physical examination findings (see, e.g., Dr. Alvarez's November 21, 2013 assessment-Tr. 34); Plaintiff's reports of improvement in his sleep with adjustments to his CPAP machine and transition to a BiPAP machine (Tr. 36-38); and Plaintiff's reported activities, which included the ability to take care of his children with his family's help, take care of his personal needs with his wife's help, prepare simple meals, do some household chores, handle money with help from his wife, watch television, and go to his nephew's baseball games, his mother's house, and doctor's appointments (Tr. 30). The ALJ also referenced generally unremarkable observations concerning Plaintiff's mental status examination (Tr. 35-38); Plaintiff's denial of his allegedly disabling mental health symptoms at times, including memory loss (Tr. 34); his September 2015 report that he was "okay" and feeling the "best" he had ever felt (Tr. 37); and his March 2016 report

reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." Werner v. Comm'r, of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011). Plaintiff is correct that the ALJ could have better articulated the inconsistencies. Still, on this record, support for the credibility finding is obvious and remand is not required.

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004); Miles, supra. "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. (internal quotation and citations omitted). As the Commissioner's decision was made in accordance with proper legal standards and is supported by substantial evidence, it is due to be affirmed.

## Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED** and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

---

that his mood was stable with medications (Tr. 38). All of these findings are supported by the exhibits referenced by the ALJ.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on May 25, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

      Presiding United States District Judge
      Counsel of Record